# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ASHLEY A. F.,                          )
                                       )
                Plaintiff,             )
                                       )
        v.                             )        1:22CV983
                                       )
MARTIN J. O'MALLEY,                    )
Commissioner of Social                 )
Security,                              )
                                       )
                Defendant.[1]          )

## MEMORANDUM OPINION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Ashley A. F., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of the final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 2.) The Commissioner has filed the certified administrative record (Docket Entry 6 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 9 (Plaintiff's Brief); Docket Entry 11 (Commissioner's Brief); Docket Entry 13 (Plaintiff's Reply)). For the reasons that

---

[1] On December 20, 2023, President Joseph R. Biden, Jr., appointed Martin J. O'Malley as Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should substitute for Kilolo Kijakazi as Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

follow, the Court will enter judgment for Plaintiff remanding this case for further administrative proceedings.[2]

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 208-12), alleging a disability onset date of August 28, 2019 (see Tr. 208).  Upon denial of that application initially (Tr. 55-65, 103-11) and on reconsideration (Tr. 66-72, 113-17), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 112).  Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 30-54.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act.  (Tr. 7-24.)  The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 205-07), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

1.  [Plaintiff] last met the insured status requirements of the . . . Act on March 31, 2022.

2.  [Plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of August 28, 2019 through her date last insured of March 31, 2022.

. . .

---

[2] On consent of the parties, this "case [wa]s referred to [the undersigned] United States Magistrate Judge [] to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings therein." (Docket Entry 12 at 1.)

3.    Through the date last insured, [Plaintiff] had the following severe impairments: obesity, bipolar disorder and post-traumatic stress disorder (PTSD).

. . .

4.    Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5.    . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she can occasionally climb ramps and stairs and cannot climb ladders or scaffolds.  She can understand, recall, and carry out simple, routine tasks involving no more than simple, short instructions and simple, work-related decisions with few workplace changes.  She should not work at a fixed production rate or pace.  [Plaintiff] can occasionally interact with others.

. . .

6.    Through the date last insured, [Plaintiff was unable to perform any past relevant work.

. . .

10.   Through the date last insured, considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed.

. . .

11.   [Plaintiff] was not under a disability, as defined in the . . . Act, at any time from August 28, 2019, the

Case 1:22-cv-00983-LPA   Document 14   Filed 01/30/24   Page 3 of 31

alleged onset date, through March 31, 2022, the date last insured.

(Tr. 13-20 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Even given those limitations, the Court will remand this case for further administrative proceedings.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of

4

more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any

5

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174

_____

[3] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

F.3d 473, 475 n.2 (4th Cir. 1999).[4]   A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry.  For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[5]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant  work"; if so, the claimant

_____

[4] "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[6]

## B. Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[s]ubstantial evidence does not support the ALJ's decision when the ALJ failed to resolve an apparent conflict between VE testimony that a person could perform jobs requiring a [Dictionary of Occupational Titles ('DOT') Reasoning Development Level ('RDL')] of '2' while limited to performing 'no more than simple, short instructions' and the [DOT]'s requirement that a person performing

---

[6] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

jobs with [RDL 2] be able to follow 'detailed' instructions"
(Docket Entry 9 at 6 (bold font and block formatting omitted); see
also Docket Entry 13 at 1-3); and

2) "[t]he ALJ erred in failing to provide sufficient
information to review the RFC phrase 'should not work at a fixed
production rate of pace[]'" (Docket Entry 9 at 15 (bold font and
block formatting omitted); see also Docket Entry 13 at 3-5).

Defendant contends otherwise and seeks affirmance of the ALJ's
decision.  (Docket Entry 11 at 11-19.)

### 1. Conflict Between VE Testimony and DOT

In Plaintiff's first issue on review, she maintains that
"[s]ubstantial evidence does not support the ALJ's decision when
the ALJ failed to resolve an apparent conflict between VE testimony
that a person could perform jobs requiring a [DOT RDL] of '2' while
limited to performing 'no more than simple, short instructions' and
the [DOT]'s requirement that a person performing jobs with [RDL 2]
be able to follow 'detailed' instructions."  (Docket Entry 9 at 6
(bold font and block formatting omitted); see also Docket Entry 13
at 1-3.)  More specifically, Plaintiff argues that "[t]he [United
States Court of Appeals for the] Fourth Circuit has recognized an
apparent conflict exists between a limitation to 'short, simple
instructions' and jobs requiring [RDL 2]."  (Docket Entry 9 at 10
(quoting Thomas v. Berryhill, 916 F.3d 307, 314 (4th Cir. 2019),
and citing Lawrence v. Saul, 941 F.3d 140, 143 (4th Cir. 2019)).)

9

According to Plaintiff, "[a]n RFC with a limitation to both [RDL 2] and 'very short and simple' instructions fails to comply with *Thomas* unless the conflict between the two conditions is resolved." (Id. (quoting Keen v. Kijakazi, No. 4:20CV99, 2022 WL 851722, at *4 (E.D.N.C. Mar. 22, 2022) (unpublished)).) Those contentions have merit and warrant remand.

Social Security Ruling 00-4p, Policy Interpretation Ruling: Titles II and XVI: Use of [VE] and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, 2000 WL 1898704 (Dec. 4, 2000) ("SSR 00-4p") places an affirmative duty on an ALJ to elicit an explanation from the VE as to any "apparent unresolved conflict" between the VE's testimony and the DOT:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the [DOT]. When there is an apparent unresolved conflict between VE . . . evidence and the [DOT], the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the [ALJ's] duty to fully develop the record, the [ALJ] will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p, 2000 WL 1898704, at *2 (emphasis added). Moreover, "an ALJ has not fulfilled his affirmative duty merely because the [VE] responds 'yes' when asked if her testimony is consistent with the [DOT]," Pearson v. Colvin, 810 F.3d 204, 208 (4th Cir. 2015) (internal quotation marks omitted); thus, "[t]he ALJ independently

10

must identify . . . where the [VE's] testimony seems to, but does not necessarily, conflict with the [DOT]," id. at 209 (emphasis added); see also id. (rejecting the Commissioner's argument that an "apparent" conflict meant only an "obvious" one).

In Thomas, the Fourth Circuit relied on its earlier holding in Pearson and held that an apparent conflict existed between the VE's testimony that a claimant limited to short, simple instructions could perform three particular jobs categorized by the DOT as requiring RDL 2:

> We believe that [the claimant], being limited to short, simple instructions, may not be able to carry out detailed but uninvolved instructions.  This is not a categorical rule - some instructions, particularly if they are well-drafted, may be simultaneously short, simple, detailed, and uninvolved.  Even so, the conflict between [the claimant]'s limitation to short, simple instructions and the VE's testimony that [the claimant] could perform jobs that include detailed but uninvolved instructions is as apparent as the conflict we identified in Pearson.  Since we held that an apparent conflict existed in Pearson, we are satisfied that one exists in this case, too.  We remand so that the ALJ can resolve the conflict in accordance with the [SSA]'s regulations.

Thomas, 916 F.3d at 314 (emphasis added) (footnote omitted); see also Lawrence, 941 F.3d at 143 ("'Short' is inconsistent with 'detailed' because detail and length are highly correlated. Generally, the longer the instructions, the more detail they can include.").[7]

---

[7] A job's RDL reflects the degree of analytical ability required by the job, with the levels arranged in ascending order of complexity from level 1 to level 6.  See generally DOT, App'x C ("Components of the Definition Trailer"),

11

Here, the ALJ queried the VE whether jobs existed for an individual who remained able, as relevant to the instant assignment of error, to "understand, recall, and carry out simple, routine tasks involving <u>no more than simple, short instructions</u>, and simple work-related decisions with few workplace changes." (Tr. 51 (emphasis added).) The ALJ "further define[d] <u>simple tasks with simple instructions</u> as retaining the ability to apply common sense[] understanding to carry out written, oral, or diagram[m]ed instructions and able to deal with problems involving several concrete variables in or from standardized situations." (Tr. 51-52 (emphasis added).)[8] In response, the VE opined that such an individual could not perform Plaintiff's past relevant work but could perform other jobs, such as marker, photocopy machine operator, and laboratory equipment cleaner. (Tr. 52.) The VE then provided the corresponding <u>DOT</u> codes for the jobs, as well as their incidence in the national economy. (<u>Id.</u>)

_____

§ III ("General Educational Development"), 1991 WL 688702. A job with RDL 1 entails the abilities to "[a]pply commonsense understanding to carry out <u>simple one- or two-step instructions</u> . . . [and d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." <u>Id.</u> (emphasis added). In contrast, a position rated at RDL 2 requires a worker to "[a]pply commonsense understanding to carry out <u>detailed but uninvolved written or oral instructions</u> . . . [and d]eal with problems involving a few concrete variables in or from standardized situations." <u>Id.</u> (emphasis added).

[8] The language the ALJ used to "further define simple tasks with simple instructions" (Tr. 51-52) tracks the <u>DOT</u>'s definition of RDL 3, <u>see DOT</u>, App'x C, § III, 1991 WL 688702 (defining RDL 3 as requiring workers to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form," and to "[d]eal with problems involving several concrete variables in or from standardized situations").

12

The ALJ subsequently issued an unfavorable decision containing an RFC which found that Plaintiff could "understand, recall, and carry out simple, routine tasks involving <u>no more than simple, short instructions</u> and simple, work-related decisions with few workplace changes" (Tr. 15 (emphasis added)), but did <u>not</u> include the language quoted above from the dispositive hypothetical question to the VE further defining simple tasks with simple instructions as retaining the ability to perform RDL 3 jobs (<u>see</u> Tr. 15-16).  At step five of the SEP, the ALJ adopted the VE's testimony as to Plaintiff's ability to perform the three jobs in question:

> . . . To determine the extent to which [the RFC's nonexertional] limitations eroded the occupational base of unskilled work at all exertional levels, the [ALJ] asked the [VE] whether jobs existed in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC].  The [VE] testified that given all these factors the individual would have been able to perform the requirements of representative occupations such as that of marker ([<u>DOT</u>] #209.587-034), light work, [Specific Vocational Preparation ('SVP')] 2, 262,683 jobs nationally; that of photocopy machine operator ([<u>DOT</u>] #207.685-014), light work, SVP 2, 17,917 jobs nationally; and that of laboratory equipment cleaner ([<u>DOT</u>] #381.687-022), medium work, SVP 2, 49,878 jobs nationally.

> Pursuant to SSR 00-04p, the [ALJ] has determined that the [VE's] testimony is consistent with the information contained in the [<u>DOT</u>].  To the extent that the [VE]'s testimony is inconsistent with or not addressed in the [<u>DOT</u>], the [ALJ] relies on the [VE]'s education and work experience.

> Based on the testimony of the [VE], the [ALJ] concludes that, through the date last insured, considering

> [Plaintiff's] age, education, work experience, and [RFC],
> [Plaintiff] was capable of making a successful adjustment
> to other work that existed in significant numbers in the
> national economy. A finding of "not disabled" is
> therefore appropriate . . . .

(Tr. 19-20.) The DOT characterizes all three jobs as requiring RDL 2. See DOT, No. 209.587-034 ("Marker"), 1991 WL 671802 (G.P.O. 4th ed. rev. 1991); DOT, No. 207.685-014 ("Photocopying-Machine Operator"), 1991 WL 671745; DOT, No. 381.687-022 ("Cleaner, Laboratory Equipment"), 1991 WL 673259.

The ALJ here violated Pearson, Thomas, and SSR 00-4p by failing to identify and resolve the apparent conflict between the VE's testimony that an individual limited to "no more than simple, short instructions" could perform the jobs of marker, photocopying machine operator, and laboratory equipment cleaner (Tr. 51 (emphasis added)), and the DOT's RDL 2 rating for all three of those jobs, see DOT, No. 209.587-034 ("Marker"), 1991 WL 671802; DOT, No. 207.685-014 ("Photocopying-Machine Operator"), 1991 WL 671745; DOT, No. 381.687-022 ("Cleaner, Laboratory Equipment"), 1991 WL 673259. At no point during the hearing did the ALJ ask the VE whether the three jobs in question involved following instructions that qualified as "simultaneously short, simple, detailed, and uninvolved," Thomas, 916 F.3d at 314. (See Tr. 50-54.) Moreover, the ALJ's generalized statement that, "[t]o the extent that the [VE]'s testimony [wa]s inconsistent with or not addressed in the [DOT], the [ALJ] relie[d] on the [VE]'s education

14

and work experience" (Tr. 20), did not suffice to either identify or resolve the RDL 2 apparent conflict, as the VE testified at the hearing that her testimony remained "consistent with the [DOT]" and did not identify any areas of her testimony that conflicted with the DOT or that the DOT did not address (see Tr. 52). See Pearson, 810 F.3d at 210 ("An ALJ has not fulfilled his duty to develop the record . . . if he ignores an apparent conflict because the [VE] testified that no conflict existed.")[9]

The Court finds Keen persuasive authority on this issue. In that case, the ALJ's RFC restricted the plaintiff to work rated at RDL 2, which the ALJ further defined to mean "'the ability to do simple, repetitive, and routine tasks and to understand and carry out very short and simple oral and written instructions,'" Keen, 2022 WL 851722, at *2 (emphasis added), and then found, at step five, that the plaintiff could perform three jobs (including marker and photocopying machine operator, as in the instant case) rated by the DOT at RDL 2, see id. The Commissioner had argued, based on Thomas, that RDL 2 "d[id] not automatically exclude jobs with short instructions," and that no apparent conflict existed "because [the] ALJ [] explicitly found [the p]laintiff capable of performing [RDL] 2 jobs and the jobs [] identified at step five [we]re all [RDL] 2

---

[9] Indeed, the VE could not have identified the conflict between the limitation to simple, short instructions and RDL 2, as (at the hearing) the ALJ defined simple tasks with simple instructions as retaining the ability to perform RDL 3 jobs. (See Tr. 51-52.)

15

jobs." Id. at *3. The Keen court explained its disagreement with the Commissioner's position as follows:

> The Commissioner's arguments do not persuade for the following reasons. First, while it is true that *Thomas*[] did not announce a categorical rule regarding short instructions and [RDL] 2 jobs, [the] ALJ [] elicited no testimony from the VE or otherwise addressed the apparent inconsistency recognized in *Thomas*. Had [the] ALJ [] or the VE explained that the jobs identified at step five involve instructions that are 'simultaneously short, simple, detailed, and uninvolved,' as *Thomas* suggested, then the Commissioner's argument might be persuasive. But that is not the case. Second, relying on [the] ALJ['s ] finding that [the p]laintiff can perform [RDL] 2 jobs only shifts the apparent conflict from between the RFC and step-five jobs to an internal conflict in [the] ALJ['s ] RFC assessment. After all, [the] ALJ [] would still need to reconcile his finding that [the p]laintiff can perform [RDL] 2 jobs but can only perform jobs with 'very short and simple instructions.' Whether the conflict exists between the RFC and the step-five jobs, as discussed in *Pearson*, *Thomas*, and *Lawrence*, or as an internal inconsistency in the RFC, remand is required.

Keen, 2022 WL 851722, at *4 (internal citations and footnote omitted).

In response, the Commissioner contends that "the ALJ's express definition of [simple tasks with simple instructions] during the hearing distinguishes this case from those relied on by Plaintiff, and *resolved* any *potential* conflict." (Docket Entry 11 at 15 (emphasis supplied by the Commissioner).) Additionally, the Commissioner points out that "this Court has considered this argument and correctly rejected it," and provided the following pertinent reasoning from that case:

16

> Here, [the p]laintiff argues that[,] because the ALJ's
> hypothetical question to the VE included that the
> 'individual can understand, remember, and carry out
> short, simple instructions[,]' there was an apparent
> unresolved conflict between the VE's identification of
> [RDL] 2 jobs and the [DOT]. Nevertheless, in this case,
> the ALJ also included in her hypothetical the limitation
> that the 'individual can apply common sense understanding
> to carry out detailed but uninvolved written or oral
> instructions and can deal with problems involving a few
> concrete variables in or from standardized situations.'
> Because the VE's testimony was in response to the entire
> hypothetical, not a portion of it, there was no apparent
> conflict between his testimony and the [DOT]. Therefore,
> the ALJ reasonably relied on the VE's testimony, and [the
> ALJ's] step five finding was supported by substantial
> evidence.

(Id. (quoting Taylor v. Kijakazi, No. 1:21CV648, 2022 WL 4668273,
at *4 (M.D.N.C. Aug. 2, 2022) (unpublished) (Webster, M.J.),
recommendation adopted, 2022 WL 4621418 (M.D.N.C. Sept. 30, 2022)
(unpublished) (Osteen, Jr., J.) (internal parenthetical citations
omitted)).) The Taylor case, however, differs from the facts in
this case in three ways that diminish its persuasive value here.

First, Taylor reasoned that, "[i]f the hypothetical individual
can 'apply commonsense understanding to carry out detailed but
uninvolved written or oral instructions and [deal] with problems
involving a few concrete variables in or from standardized
situations,' she can also understand, remember, and carry out
short, simple instructions." Taylor, 2022 WL 4668273, at *5
(citing Allison P. v. Berryhill, No. 2:18CV61, 2019 WL 1373646, at
*6 (D. Me. Mar. 24, 2019) (unpublished) ("[A] person capable of
performing work at [RDL] 2 would also be capable of performing work

17

at the lower level of [RDL] 1.")).  In other words, the Court in
Taylor interpreted the hypothetical to mean that the plaintiff
could perform both the more complex category of jobs requiring
"detailed but uninvolved instructions" as well as the lesser-
included category of work involving "short, simple instructions."
Id.

In contrast, here, the ALJ limited Plaintiff to "no more than
simple, short instructions" (Tr. 51 (emphasis added)), and then
defined "simple tasks with simple instructions" as retaining the
ability to perform RDL 3 jobs (Tr. 51-52), i.e., jobs with even
more complex reasoning requirements than the RDL 2 jobs in Taylor,
see Keller v. Berryhill, 754 F. App'x 193, 198 (4th Cir. 2018)
("Because [RDL] 3 is more demanding than [RDL] 2 by the very nature
of the Reasoning Development scale, it appears that [RDL] 3 jobs
require more than the ability to carry out short and simple
instructions.  That determination is also supported by the fact
that — unlike the definitions of [RDL] 1 and 2 — RDL 3's definition
places no explicit limitation on the complexity of the instructions
to be carried out; instead, [RDL] 3 describes only the form of
those instructions.  We therefore conclude that an apparent
conflict exists between a limitation to short and simple
instructions and [RDL] 3 occupations." (footnote omitted)).  Under
such circumstances, the Court cannot find that the ALJ's mere
simultaneous inclusion in the dispositive hypothetical question of

18

a limitation to "no more than simple, short instructions" (Tr. 51 (emphasis added)) and the ability to perform jobs rated at RDL 3 (Tr. 51-52) either identifies or resolves the apparent conflict between those two limitations.

Second, the ALJ's dispositive hypothetical question here defined "simple tasks with simple instructions" as retaining the ability to perform RDL 3 jobs but, notably, omitted the word "short" from the phrase "simple instructions." (Tr. 51-52.) As Plaintiff points out, "[s]ince 'short instructions' are the source of the conflict with the [RDL 2] jobs cited at [s]tep [f]ive, the ALJ's definition of 'simple tasks[ with simple instructions]' does nothing to resolve the apparent conflict with 'short instructions.'" (Docket Entry 9 at 13 (citing Tr. 51-52).) The Taylor case did not involve that anomaly. See Taylor, 2022 WL 4668273, at *4.

Third, "the ALJ did not include [her] definition of 'simple tasks[ with simple instructions]' in the written RFC, so the decision is unclear as to whether th[at ] definition . . . applies to the written decision." (Docket Entry 9 at 13 (citing Tr. 15-16, and quoting Tr. 51-52).) In other words, because "the ALJ's written RFC is more restrictive than the [dispositive] hypothetical question[,] . . . the VE['s] testimony [cannot] provid[e] substantial evidence to support the ALJ's denial of benefits." (Docket Entry 13 at 2 (citing Houston v. Astrue, No. 3:10CV470,

19

2011 WL 4747879, at *2 (W.D.N.C. Oct. 7, 2011) (unpublished) ("[T]he hypothetical posed to the VE did not include all of the limitations as found by the ALJ . . . [and] a new hearing is appropriate for the limited purpose of allowing the ALJ to resubmit a hypothetical to the VE that includes all of the plaintiff's limitations.")).)  In Taylor, by contrast, the dispositive hypothetical question to the VE and the RFC matched.  See Taylor, 2022 WL 4668273, at *4.

In sum, the ALJ failed to identify and resolve an apparent conflict between the VE's testimony and the DOT in violation of Pearson, Thomas, and SSR 00-4p, warranting remand.

## 2. Fixed Production Rate or Pace

Lastly, Plaintiff maintains that "[t]he ALJ erred in failing to provide sufficient information to review the RFC phrase 'should not work at a fixed production rate or pace.'"  (Docket Entry 9 at 15 (bold font and block formatting omitted); see also Docket Entry 13 at 3-5.)  In particular, Plaintiff notes that, in Thomas, the Fourth Circuit held that an RFC precluding "'work requiring a production rate or demand pace . . . did not give [the court] enough information to understand what those terms mean[, which ] makes it difficult, if not impossible, for [the court] to assess whether their inclusion in [the plaintiff]'s RFC is supported by substantial evidence.'"  (Docket Entry 9 at 16 (quoting Thomas, 916 F.3d at 312) (internal quotation marks omitted).)  Plaintiff

20

further points out that "[t]he ALJ limited [Plaintiff] to work that is not performed 'at a fixed production rate or pace' after finding she had moderate limitations in concentrating, persisting, or maintaining pace [('CPP')]" (Docket Entry 9 at 16 (citing Tr. 15-16)), but "did not provide further definition regarding the intended meaning of th[at] phrase, either in the written decision or at the hearing" (id. (citing Tr. 15-20, 51-54)). In Plaintiff's view, "[t]he ALJ's failure to include enough information to understand the meaning of work not performed at a 'fixed production rate or pace' . . . prevents the Court from [1]] determining whether the RFC adequately accounts for [Plaintiff]'s moderate CPP limitations, and therefore, whether the decision complies with *Mascio*[ *v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015),]" and 2) "determin[ing] whether conflicts exist between [the] VE['s] testimony that [Plaintiff] could perform the jobs cited . . . with her RFC, and the [DOT] description of th[o]se jobs," each of which "could reasonably require a 'fixed production rate or pace.'" (Id. at 17 (citing DOT, No. 209.587-034 ("Marker"), 1991 WL 671802, DOT, No. 207.685-014 ("Photocopying-Machine Operator"), 1991 WL 671745, and DOT, No. 381.687-022 ("Cleaner, Laboratory Equipment"), 1991 WL 673259).) Plaintiff's arguments fall short.

a.  CPP/Mascio

The Fourth Circuit has held that "the ability to perform simple tasks differs from the ability to stay on task[,]" and that

21

"[o]nly the latter limitation would account for a claimant's limitation in [CPP]." Mascio, 780 F.3d at 638. However, as a neighboring district court has explained:

> Mascio does not broadly dictate that a claimant's moderate impairment in [CPP] always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . . An ALJ may account for a claimant's limitation with [CPP] by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Jones v. Colvin, No. 7:14CV273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (magistrate judge's recommendation adopted by district judge) (unpublished) (emphasis added); see also Hutton v. Colvin, No. 2:14CV63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015) (unpublished) (finding reliance on Mascio "misplaced," because ALJ "gave abundant explanation" for why the plaintiff could perform unskilled work despite moderate limitation in CPP, by highlighting his daily activities and treating physicians' opinions). Here, the ALJ's decision provides a sufficient explanation as to why restrictions to "simple, routine tasks involving no more than simple, short instructions and simple work-related decisions with few workplace changes," "occasional[] interact[ion] with others," and "work not at a fixed production rate or pace" (Tr. 15-16) adequately accounted for Plaintiff's moderate deficit in CPP.

22

First, the ALJ discussed Plaintiff's statement "that PTSD, depression, anxiety and panic attacks limited her ability to perform day-to-day tasks" (Tr. 16 (citing Tr. 256)), as well as her testimony "that she generally could not work after 90 days due to being overexhausted, which led to shutting down, described as a bipolar episode" (id. (internal quotation marks omitted) (referencing Tr. 37)), "that she would usually quit the job due to inability to get up and get out of bed and get sta[r]ted with her day" (id. (referencing Tr. 37-38)), and "that she had difficulty focusing while at work" (id. (referencing Tr. 37-38)).  However, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [] not entirely consistent with the objective medical and other evidence for the reasons discussed in th[e ALJ's] decision" (id.), and Plaintiff did not challenge the ALJ's assessment of Plaintiff's subjective symptom reporting (see Docket Entries 9, 13).

Second, the ALJ summarized Plaintiff's mental health treatment, making the following, pertinent observations:

- "[p]rogress notes in April 2020 show that [Plaintiff] denied any bouts of mania or profound sadness," that "she felt much more composed and more stable," and "that Vraylar was 'very' effective" (Tr. 17 (quoting Tr. 1598));

- in August 2020, Plaintiff "reported feeling very well since switching back to Vraylar in January," "that she was much less anxious and more 'upbeat,' with [the] ability to think more clearly," "that Trazodone seemed more effective than Ambien

23

regarding sleep," and "that she felt rested when waking up in the morning" (id. (quoting Tr. 1604));

- although in December 2020, Plaintiff reported "that she had a 'rough few months,' which she attributed to her husband making her leave the home after a disagreement" (id. (citing Tr. 1607)), "[o]n follow-up in January 2021, progress notes show that [Plaintiff] was more 'upbeat' and relaxed," "that the increase in Vraylar helped," that she "described her mood as under control and . . . better adjusted since the split from her husband," and "described [her] situation as calm and steady" (id. (citing Tr. 1610));

- "[i]n February 2021, [Plaintiff] reported that things seemed to be going well," "that she had a new job and was very happy," and "that her medication seemed to help her remain stable," and Plaintiff "denied profound sadness or episodes of mania" and "reported sleeping well and ha[ving] a good appetite" (id. (citing Tr. 1614)); and

- "in July 2021, . . . [Plaintiff] wanted to go back on Vraylar" and "reported that she experienced more depression and anxiety than usual due to legal issues," but she "exhibited good concentration" (Tr. 18 (emphasis added) (citing Tr. 1618)) and, "in November 2021[, s]he stated that Vraylar prevented manic symptoms, reduced anxiety and g[a]ve her [the] ability to complete her activities of daily living," as well as "reported sleeping well" (id. (citing Tr. 1622)).

All of those findings support the ALJ's more general observation regarding the "intensity, persistence, and limiting effects of [Plaintiff's] symptoms" that, although Plaintiff "ha[d] intermittent exacerbations of her psychiatric symptoms," she "generally ha[d] responded well to prescribed medications." (Tr. 17.) In turn, that observation supports the ALJ's finding that, despite moderate limitation in CPP, Plaintiff remained able to

24

perform a limited range of simple, non-production work (see Tr. 15-16).

Third, the ALJ's non-production restriction, in and of itself, adequately accounts for Plaintiff's moderate limitation in CPP. See Grant v. Colvin, No. 1:15CV515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016) (unpublished) (finding non-production restriction "facially addresse[d] moderate . . . limitation in the claimant's ability to stay on task" (internal quotation marks omitted)), recommendation adopted, slip op. (M.D.N.C. Sept. 21, 2016) (Osteen, Jr., C.J.). Indeed, despite Plaintiff's arguments regarding the insufficiency of the ALJ's non-production restriction here, a review of decisions from the Fourth Circuit addressing non-production restrictions in the context of Mascio bolsters the conclusion that the ALJ's restrictions to "simple, routine tasks involving no more than simple, short instructions and simple work-related decisions with few workplace changes," "occasional[] interact[ion] with others," and "work not at a fixed production rate or pace" (Tr. 15-16) properly accommodate Plaintiff's moderate limitation in CPP.

In Thomas, the Fourth Circuit held that the ALJ's preclusion of "work requiring a production rate or demand pace[ ] did not give [the court] enough information to understand what those terms mean." Thomas, 916 F.3d at 312 (emphasis added) (internal quotation marks omitted). Shortly thereafter, the Fourth Circuit

25

found fault with "the ALJ's reference to a '<u>non-production oriented</u> <u>work setting</u>,'" as the Fourth Circuit "d[id] not know what the ALJ intended when she used that phrase," making it "difficult, if not impossible, to evaluate whether restricting [the plaintiff] to a 'non-production oriented work setting' properly accounted for [his] well-documented limitations in [CPP]." <u>Perry v. Berryhill</u>, 765 F. App'x 869, 872 (4th Cir. 2019) (emphasis added).

However, those cases "did not create a categorical rule that failing to define certain terms constitutes a reversible error," <u>Taylor v. Saul</u>, No. 3:19CV468, 2020 WL 4340536, at *6 (E.D. Va. July 27, 2020) (unpublished), but, rather, "clarified that a reviewing court's ability to understand phrases such as 'production rate o[r] pace' in an ALJ's opinion depends on the phrase's context and use," <u>Katherine M. A. v. Saul</u>, No. 3:19CV649, 2021 WL 1207739, at *10 (E.D. Va. Feb. 2, 2021) (unpublished), <u>recommendation</u> <u>adopted</u>, 2021 WL 1206799 (E.D. Va. Mar. 30, 2021) (unpublished). As another judge of this Court recently reasoned:

> In [<u>Perry</u>], the Fourth Circuit specifically distinguished its decision in <u>Sizemore v. Berryhill</u>, 878 F.3d 72 (4th Cir. 2017), where it "found that an ALJ had adequately explained a[n RFC] assessment that restricted the claimant, in part, to '<u>non-production jobs</u>,'" as "the ALJ in <u>Sizemore</u> provided additional context, explaining that the claimant could perform work only in a '<u>low stress</u>' <u>setting, without any 'fast-paced work' or 'public</u> <u>contact</u>,' to account for moderate limitations in [CPP]," which "<u>descriptors helped to explain the restriction</u> <u>intended by the ALJ</u>, and allowed [the Fourth Circuit] to evaluate whether that restriction adequately accounted for the claimant's limitations." <u>Perry</u>, [765 F. App'x at

872] n.1. As in <u>Sizemore</u>, and unlike in <u>Perry</u>, the ALJ here provided the necessary 'descriptors,' limiting [the p]laintiff to 'a <u>low stress, low production environment with no rigid quota and occasional exposure to people</u>.' Accordingly, <u>Perry</u> does not justify remand in this action.

<u>Ross v. Berryhill</u>, No. 1:17CV1145, 2019 WL 1430129, at *1 (M.D.N.C. Mar. 29, 2019) (unpublished) (Schroeder, C.J.) (emphasis added) (internal parenthetical citation omitted).

As in <u>Ross</u> (and consistent with <u>Sizemore</u>, as construed in <u>Perry</u>), the ALJ here provided the descriptor "fixed" to modify "production rate or pace" (Tr. 16), "which permits this Court to understand that Plaintiff cannot always perform certain work tasks within a time allotment," <u>Katherine M. A.</u>, 2021 WL 1207739, at *10. Moreover, the ALJ also included the descriptors of "simple work-related decisions with few workplace changes" and only "occasional[] interact[ion]" with supervisors, coworkers, and the public (Tr. 15-16). Those descriptors "help[] to explain the restriction intended by the ALJ, and allow[ the Court] to evaluate whether that restriction adequately accounted for [Plaintiff's CPP] limitations," <u>Perry</u>, 765 F. App'x at 872 n.1.

Put simply, Plaintiff has demonstrated neither that the ALJ's non-production restriction prevents the Court from meaningfully reviewing the ALJ's compliance with <u>Mascio</u>, nor that the ALJ erred under <u>Mascio</u>.

27

b. Conflict Between VE and DOT Regarding Production Restriction

Plaintiff's contention that "[t]he ALJ's failure to include enough information to understand the meaning of work not performed at a 'fixed production rate or pace' . . . prevents the Court from . . . determin[ing] whether conflicts exist between [the] VE['s] testimony that [Plaintiff] could perform the jobs cited . . . with her RFC, and the [DOT] description of th[o]se jobs" (Docket Entry 9 at 17) fares no better. As an initial matter, the VE here did not express _any_ difficulty in understanding the meaning of the words "fixed production rate or pace" in responding to the ALJ's dispositive hypothetical question. (Tr. 52.)[10] The VE provided three jobs that fit within the ALJ's non-production restriction, e.g., marker, photocopying machine operator, and laboratory equipment cleaner (see id.), and the corresponding DOT job descriptions, see DOT, No. 209.587-034 ("Marker"), 1991 WL 671802 (providing that worker "[m]arks and attaches price tickets to articles of merchandise to record price

_____

[10] Significantly, the DOT's definition of "light work" includes the words "production rate pace":

> [A] job should be rated [l]ight [w]ork . . . when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

DOT, App'x C ("Components of the Definition Trailer"), § IV ("Physical Demands - Strength Rating"), 1991 WL 688702 (emphasis added).

and identifying information: [m]arks selling price by hand on boxes containing merchandise, or on price tickets[; t]ies, glues, sews, or staples price ticket to each article[; and p]resses lever or plunger of mechanism that pins, pastes, ties, or staples ticket to article"); DOT, No. 207.685-014 ("Photocopying-Machine Operator"), 1991 WL 671745 (setting forth that employee "[t]ends duplicating machine to reproduce handwritten or typewritten matter: [p]laces original copy on glass plate in machine[; p]laces blank paper on loading tray[; s]ets control switch for number of copies[; and p]resses button to start machine which transfers image of original copy onto blank paper by photographic and static electricity process"); DOT, No. 381.687-022 ("Cleaner, Laboratory Equipment"), 1991 WL 673259 (stating that individual in that job "[c]leans laboratory equipment, such as glassware, metal instruments, sinks, tables, and test panels, using solvents, brushes, and rags: [m]ixes water and detergents or acids in container to prepare cleaning solution according to specifications[; w]ashes, rinses, and dries glassware and instruments, using water, acetone bath, and cloth or hot-air drier[; s]crubs walls, floors, shelves, tables, and sinks, using cleaning solution and brush"), do not show that those jobs actually involve a fixed production rate or pace. See Spurlock v. Berryhill, No. , 2018 WL 791302, at *7-8 (M.D.N.C. Feb. 8, 2018) (unpublished) (rejecting the plaintiff's conclusory argument "that the [m]arker job [] appear[ed] to require a production pace per the

29

DOT description," because "[the p]laintiff did not buttress her vague claim that . . . th[e marker] job[] qualif[ied] as [a] production pace/setting job[] with any supporting facts" (internal quotation marks and brackets omitted)), <u>recommendation adopted</u>, 2018 WL 4931610 (M.D.N.C. Mar. 21, 2018 (unpublished) (Eagles, J.). Plaintiff's <u>subjective</u> opinion that the three jobs "could reasonably require a 'fixed production rate of pace'" (Docket Entry 9 at 17) does not outweigh the ALJ's reliance on the <u>DOT</u> and the VE's testimony. <u>See</u> <u>Nace v. Colvin</u>, No. EDCV 14-641, 2015 WL 2383833, at *9 (C.D. Cal. May 18, 2015) (unpublished) ("[The p]laintiff's personal opinion is not a reliable source of job information, and she cites no legal authority for her contention that the [c]ourt should overlook the two designated sources of reliable job information in this case - the [<u>DOT</u>] and the VE's testimony - in favor of [the plaintiff's] own subjective beliefs.").

In light of the foregoing analysis, Plaintiff's second and final assignment of error does not establish a basis for remand.

## III. CONCLUSION

Plaintiff has established an error warranting remand.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **VACATED,** and that this matter is **REMANDED** under sentence four of 42 U.S.C. 405(g) for further administrative

proceedings, to include identification and resolution by the ALJ of any apparent conflict between the VE's testimony and the <u>DOT</u> in accordance with <u>Pearson</u>, <u>Thomas</u>, and SSR 00-4p.

_____/s/ L. Patrick Auld_____
**L. Patrick Auld**
**United States Magistrate Judge**

January 30, 2024